1  Daniel Barham

2  115 Rue Saint Philippe

3  Montreal, Quebec H4C 2T8

4  514-777-7102

5  Private individual

6

7  **UNITED STATES DISTRICT COURT**

8  **FOR THE DISTRICT OF NEVADA**

9

10  RIGHTHAVEN LLC, a Nevada limited-liabiliy        )

11            company,                    )

12              *Plaintiff*            )

13              v.               )    Civil Action No. 2:10-cv-02150

14  DANIEL BARHAM, an individual; and URBAN        )

15  NEIGHBOURHOOD, an entity that exists solely      )

16  as Mr. Barham's internet based blog.            )

17             *Defendant*

18

19

20  <u>DEFENDANT, DANIEL BARHAM'S MOTION TO DISMISS</u>

21

22  INTRODUCTION

23

24      Daniel Barham is a student who operates an internet blog at www.urbanneighbourhood

25  .com which provides information and commentary related to urban planning and architecture

26  around the world. Urban Neighborhood is a not for profit blog that exists solely as a Mr.

27  Barham's blog. Urban Neighbourhood receives no income and has no paid advertisements, text

28  and an image, herein referred to as "the Work" from an article, herein referred to as "the Article"

1    on the Las Vegas Review-Journal's website was quoted and  placed in a post on this blog, herein

2    referred to as "the Post". The suite by the plaintiff alleges that the action of placing the Work

3    within the Post constitutes a violation of copyright. The defendant will show that the plaintiff has

4    failed to prove ownership of the Work, and has only proven ownership of author created text. If

5    ownership of author created text constitutes ownership of the Article and as such ownership of

6    the Work as it was contained within the Article then the defendant will show that the

7    reproduction of a small portion of the Article does not rise to the level of a copyright violation,

8    and is protected under the provisions of fair use.  Pursuant to this it will be shown that the

9    Review-Journal encourages bloggers and commentators to copy and reproduce its content. Also

10   the Defendant will show that Righhaven, LLC, herein referred to as "Righthaven" has brought

11   this Complaint before the court with unclean hands, therefore, the Complaint brought by

12   Righthaven against Daniel Barham must be dismissed in its entirety.

15   POINTS AND AUTHORITIES

17   I. STATEMENT OF FACTS

18           Defendant Daniel Barham hereby moves this Court for dismissal of the Complaint filed

19   against him by Righthaven. The gravamen of the claims brought in that Complaint are for

20   copyright infringement, arising out of Mr. Barham's reproduction of an image within an article

21   that appeared in the online version of the Las Vegas Review-Journal (hereinafter "Review-

22   Journal") titled "'Vdara visitor:' Death ray scorched hair." The Article contained factual

23   information about the design of the Vdara Hotel and a quote from a bystander along with the

24   Work.

1    The Article was authored by Joan Whitely, an employee of the Review Journal, which,

2   purportedly, owned the copyrights to the intellectual property created by the author. The

3   ownership of the copyright in the Whitely work has presumably been transferred to Righthaven.

4   The ownership of the Work is listed as Mike Johnson and the Review-Journal and presumably

5   continues as such as the evidence presented by the plaintiff in exhibit 3 of both the Complaint

6   and the Motion lists the author created work as 'text' which one could reasonably assume refers

7   to the Article.

8
9   II. STANDARD OF REVIEW

10    For a defendant to prevail on a motion to dismiss under Federal Rule of Civil Procedure

11   12(b)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of his

12   claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

13   Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9 Cir. 1993). The purpose of a motion under

14   Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief in

15   the complaint. Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9 Cir.1987).

16
17
18
19   III. ARGUMENT
20
21    A. DISMISSAL OF THE CLAIMS OF ALLEGED COPYRIGHT INFRINGEMENTOF

22       THE WORK FOR WHICH NO COPYRIGHT OWNERSHIP HAS BEEN

23       DEMONSTRATED IS WARRANTED

24    The Complaint alleges an instance of alleged copying of an image which they refer to as the

25   Work in their claim, but the application for copyright ownership asserts ownership of author

26   created text, the license does not list author created image, as is demonstrated in exhibit 3 of

1    Civil Action No. 2:10-cv-02150, appended to this motion as exhibit 3.  As ownership of the

2    copyright in a work is a prerequisite to bringing a lawsuit to enforce the copyright,[1] and as

3    Righthaven has not demonstrated in the Complaint ownership of the copyright for the Work,

4    dismissal is warranted.

5        B.  ANY ALLEGED INFRINGEMENT BY DANIEL BARHAM IS ALLOWED UNDER

6           THE FAIR USE DOCTRINE

7        If ownership of Author created text refers to the Article as a whole and as such includes the

8    Work, then Mr. Barham believes that Plaintiff cannot make out a prima facie copyright

9    infringement claim, as the amount copied of the Article was small.[2]  Nevertheless, without

10   waiving his assertion that regarding whether a prima facie case of copyright infringement can be

11   presented, the doctrine of fair use provides a complete defense to such claim. Therefore, the

12   infringement claim should be dismissed.

13       The doctrine of fair use is codified in the Copyright Act of 1976, 17 U.S.C. §107, which

14   states, in part:

15   Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work,
16   including such use by reproduction in copies or phonorecords or by any other means specified by
17   that section, for purposes such as criticism, comment, news reporting, teaching (including
18   multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.
19   In determining whether the use made of a work in any particular case is a fair use the factors to
20   be considered shall include ——
21
22       (1) the purpose and character of the use, including whether such use is of a commercial
23           nature or is for nonprofit educational purposes;

---

[1] 17 U.S.C. 411 (a) states, in pertinent part:
(a) Except for an action brought for a violation of the rights of the author under section 106A (a),
and subject to the provisions of subsection (b), no civil action for infringement of the copyright
in any United States work shall be instituted until preregistration or registration of the copyright
claim has been made in accordance with this title.
[2] The Article, as it appears in Exhibit "1" to Plaintiff's Complaint, albeit in incomplete form,
consists of 109 lines of text, of which, only 13 were copied, and 3 images of which only 1 was
copied. The complete Article appears in Exhibit "1" of the Defendant's motion.

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

No one factor is conclusive, but all four factors must be weighed. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994).[3]

The fair use doctrine is intended to balance the rights of authors against the creative efforts of others, and to promote the welfare of the public:

"From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose...." Campbell, 510 U.S. at 575, 114 S.Ct. 1164. "The fair use doctrine thus `permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" Id. at 577, 114 S.Ct. 1164 (quoting Stewart v. Abend, 495 U.S. 207, 236, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)) (alteration in original).
* * *
The purpose of copyright law is "[t]o promote the Progress of Science and useful Arts," U.S. CONST. art. I, § 8, cl. 8, and to serve "`the welfare of the public.'"Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 429 n. 10, 104 S.Ct. 774, 78 L.Ed.2d 574 (quoting H.R.Rep.No. 2222, 60th Cong., 2d Sess. 7 (1909)).

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1163 (9th Cir. 2007).

The alleged infringement by Daniel Barham qualifies as fair use under the four factors of the fair use doctrine.

### *1) Purpose and Character of the Use*

The most important component of the inquiry into the purpose and character of the use is the question whether the allegedly fair use was "transformative," in other words, whether the second use adds something new, with a further purpose or different character, altering the first

---

[3]"The task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis.... Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577-78, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994).

1  with new expression, meaning, or message. Los Angeles News Service v. CBS Broadcasting,

2  Inc., 305 F.3d 924 (9th Cir. 2002).[4]

3     The form in which Mr. Barham chose to republish the material with other material

4  regarding the habits of architects and designers is transformative. Mr. Barham aggregated the

5  quoted material from the Article in the Post with other information and images both from other

6  sources and his own options regarding the actions of people involved with the construction of the

7  Vdara Hotel, thereby transforming the nature of the individual article into a commentary on

8  building design.

9     Indeed, the use of the Work here which was presented as a thumbnail at the base of the

10  article is similar to the use of thumbnail pictures in Perfect 10, Inc. v. Amazon.com, Inc., 508

11  F.3d 1146 (9th Cir. 2007). In that case, Perfect 10sued Amazon and Google as a result of

12  Google's search engine reproducing thumbnail (reduced size) images of Perfect 10's copyrighted

13  images. In finding that the thumbnail reproduction was "transformative," the court stated:

14  Google's use of thumbnails is highly transformative. In Kelly, we concluded that Arriba's
15  use of thumbnails was transformative because "Arriba'suse of the images serve[d] a
16  different function than Kelly's use—improving access to information on the [I]nternet
17  versus artistic expression." Although an image may have been created originally to serve
18  an entertainment, aesthetic, or informative function, a search engine transforms the image
19  into a pointer directing a user to a source of information.[5]
20
21  Similar to the Google thumbnails, the materials presented in the Post serve not only the purpose

22  of gathering different materials related to the state of the architecture profession and attitudes of

---

[4]Opinion amended by Los Angeles News Service v. CBS Broadcasting, Inc., 313 F.3d 1093 (9th Cir. 2002).
[5]Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1165 (9th Cir. 2007) citations omitted.

1 | building designers, but the Post also acted as a pointer to the source of the information, the

2 | Review Journal website.[6]

3 |   As the use of the copied material is in a transformative context, and acted as a pointer to

4 | the source material itself, this factor weighs in favour of a finding of fair use.

5 |   *2) Nature of the Copyrighted Work*

6 |   The nature of the allegedly copied work is factual news reporting. Such information,

7 | which is less endowed with the creative activity than works of fiction, makes it easier to find fair

8 | use. "Works that are creative in nature are closer to the core of intended copyright protection

9 | than are more fact-based works."[7] "The law generally recognizes a greater need to disseminate

10 | factual works than works of fiction or fantasy."[8] As explained further in Los Angeles News

11 | Service v. CBS Broadcasting, Inc., 305 F.3d 924 (9th Cir. 2002):

12 |   We have analyzed the "nature of the copyrighted work" factor extensively in prior LANS
13 |   litigation. "The Denny beating tape is informational and factual and news; each
14 |   characteristic strongly favours [the user]. Likewise the fact that the tape was published
15 |   before its use by [the alleged infringer]. Although the Videotape is not without creative
16 |   aspect in that it is the result of [Marika] Tur's skills with a camera, still this factor makes
17 |   it a great deal easier to find fair use."This factor clearly points toward fair use.[9]
18 |
19 | Moreover, since the article by the Review Journal appeared on the internet before it was copied

20 | to the internet by Mr. Barham, this factor weighs in favour of fair use. "Published works are

21 | more likely to qualify as fair use because the first appearance of the artist's expression has

----

[6]See Exhibit "2" to the Complaint, at bottom, where it states "Read more at the Las Vegas Review
Journal." Mr. Barham's post provided access to the origin of the article, and therefore, would
have served as a feeder or pointer to the original source material, not unlike a search engine.
[7]A & M Records v. Napster, 239 F.3d 1004, 1016 (9th Cir. 2001) (citing Campbell, 510 U.S. at
586, 114 S.Ct. 1164) (internal quotation marks omitted).
[8]Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 563, 105 S.Ct. 2218, 85 L.Ed.2d
588 (1985)
[9]305 F.3d at 940; opinion amended by Los Angeles News Service v. CBS Broadcasting, Inc.,
313 F.3d 1093 (9th Cir. 2002)..

1   already occurred."[10] Thus, the "nature of the copyright work" factor, when taken as a whole,

2   mitigates in favour of a finding of fair use.

3   ### 3) Amount of the Copyrighted Work

4       This factor also favours a finding of fair use; the licence for the copyright is for author

5   created text as is listed on exhibit 3 and only the portions of the Article that were needed

6   (including the Work) were copied to illustrate the Post's commentary. If the plaintiff is claiming

7   that the licence is for the image and not text then they have failed to provide proof of ownership

8   of said image. If somehow a licence for author created text can somehow be interpreted as

9   pertaining only to an image and not text, then "wholesale copying does not preclude fair use per

10  se, copying an entire work militates against a finding of fair use."[11]

11         Case law interpreting this factor, though of course faithful to the statute's direction that
12         we are to consider the substantiality of the portion used "in relation to the copyrighted
13         work as a whole," has also noted that the purpose and character of the use are relevant in
14         evaluating the denominator. See, e.g., Kelly v. Arriba Soft Corp., 280 F.3d 934, 943 (9th
15         Cir. 2002) ("If the secondary user only copies as much as is necessary for his or her
16         intended use, then this factor will not weigh against him or her.").[12]

17
18      As stated *supra*, the Article in question, entitled "Vdara visitor: 'Death ray' scorched

19  hair" consists of 108 lines of text of which 13 were quoted, or 66 sentences in 29 paragraphs. Mr.

20  Barham copied 12 of the 66 sentences, 5 of the 29 paragraphs, or 1 of 3 images[13] by any of these

---

[10]Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 564, 105 S.Ct. 2218, 85
L.Ed.2d 588 (1985) (noting that the scope of fair use is narrower with respect to unpublished
works because the author's right to control the first public appearance of his work weighs against
the use of his work before its release).
[11]Worldwide Church of God v. Phila.Church of God, Inc., 227 F.3d 1110, 1118 (9ᵗʰCir. 2000).
[12]Los Angeles News Service v. CBS Broadcasting, Inc., 305 F.3d 924, 941 (9thCir.2002);
opinion amended by Los Angeles News Service v. CBS Broadcasting, Inc., 313 F.3d 1093 (9th
Cir. 2002).
[13]As with Exhibit 1 provided by the Plaintiff Exhibit 2 in the plaintiff's lawsuit which shows the
Post from Urban Neighbourhood is incomplete the full Post is included in Exhibit 2 of this
motion.

1  measures; Mr. Barham copied less than 30% of the Article. This factor does not weigh against a

2  finding of fair use.

3      ***4) Effect of the Use Upon the Potential Market***

4        Because the use of the copied material was transformative, it will likely have no effect on

5  the market for internet news articles. A transformative work is less likely to have an adverse

6  impact on the market of the original than a work that merely supersedes the copyrighted work.

7  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 591, 114 S.Ct. 1164, 127 L.Ed.2d 500

8  (1994) (stating that a work that supersedes the object of the original serves as a market

9  replacement for it, making it likely that market harm will occur, but when the second use is

10  transformative, market substitution is less certain).

11        Mr. Barham did not profit from advertising on the website where the copied materials

12  were displayed, unlike the alleged infringers in both the Google[14] and Arriba[15] cases. Blogs, by

13  their very nature, are informative, and are most are not written for commercial gain. Mr. Barham

14  has no advertising on Urban Neighbourhood and as such has made no profit from the Post. His

15  blog in contrast, was created to be informative, not as a source of revenue. The material was

16  placed into the Post primarily to bring attention to the general public regarding the foolhardy

17  nature of ignoring natural phenomenon when designing a building. Moreover, because Mr.

18  Barham's Post was acting as a feeder or pointer to the Review Journal website, it would likely

19  benefit, not harm the Review Journal's market.

20       Arriba's use of Kelly's images in its thumbnails does not harm the market for Kelly's
21       images or the value of his images. By showing the thumbnails on its results page when
22       users entered terms related to Kelly's images, the search engine would guide users to
23       Kelly's web site rather than away from it.[16]

---

[14]Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007).
[15]Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003).
[16]Kelly v. Arriba Soft Corp., 336 F.3d 811, 821 (9th Cir. 2003).

It is unclear as to whether Righthaven has purchased any right, other than the right to initiate litigation, from the Review-Journal with regards to the Work or the Article. If it is demonstrated that the Plaintiff cannot derive any commercial benefit or royalties from the internet publishing of the Work or the Article, and indeed Righthaven and the Review-Journal has removed the Work from the Review-Journal website and as such can make no profit from it,[17] considerations of effect upon the potential market should automatically be found in favour of Mr. Barham.

## C. IMPLIED LICENSE

Possibly the most important factor in considering the merit of this lawsuit is implied license. "An implied license can be found where the copyright holder engages in conduct from which the other party may properly infer that the owner consents to his use."[18] The Defendant argues that the Review-Journal not only offered the article to the world for free, encouraged people to save and share the article without restrictions, permitted users to "right-click" and copy the article from its website, but also actively encouraged readers to share and repost the article on other sites and forums. This is made evident when looking at the bottom of the original version of the Article where there were no fewer than 19 different ways to copy and repost the Article and the Work onto other websites and forums.[19] The Plaintiff argues that it gave no such license to the Defendant, it is clear however, from the multiple quick share links at the bottom of the Article that the defendant can reasonably assert that the conduct of the copyright holder at the time of publication on the Review-Journal website encouraged users to copy and distribute the work with the ease of a single click. Moreover at the time

[17] See Exhibit 4.
[18] *Field*, 412 F. Supp. 2d at 1116 (internal quotation marks omitted).
[19] See Exhibit 1.

1    of this writing the Review-Journal and Righthaven have increased the number of ways

2    that the Article and the Work can be shared to 52, no less than 3 of which are blogging

3    platforms, specifically; Blogger, Typepad and Wordpress,[20] these quick link and easy

4    share buttons can not be interpreted in any other way than as a license to copy and

5    reproduce the content on external websites without written consent of either the Review-

6    Journal or Righthaven which in light of the infringement lawsuits filed by Righthaven

7    smacks of entrapment as anyone who utilizes the link embedded by the Review-Journal

8    to share or to a blogging platform would no doubt be served with an infringement lawsuit.

9    For this reason the lawsuit should be dismissed.

10   ### D. DISMISSAL IS WARRANTED BECAUSE PLAINTIFF BRINGS THE CLAIMSWITH

11   ### UNCLEAN HANDS

12        Plaintiff brings these claims with unclean hands, which mandates dismissal of this action.

13   The defense of unclean hands can be invoked as a defense in a copyright infringement action.[21]

14   The actions of Plaintiff Righthaven in pursuing the instant action for copyright infringement

15   smack of barratry,[22] Righthaven was created by its counsel, Steven Gibson, apparently to pursue

16   violations of the copyrights it purchased from the Review Journal. Righthaven is not the author

17   of the work that was alleged to have been copied. In fact, as per its own motion Righthaven

18   purchased the copyright in the Work sometime after the alleged infringement occurred, and

19   likely purchased the copyright with the specific intention of pursuing this action against Mr.

20   Barham and a number of other bloggers.

---

[20]See Exhibit 4.
[21]See 4 Nimmer on Copyright § 13.09[B].
[22]Barratry is defined in Black's Law Dictionary (6th Ed.) as "the offense of frequently exciting and stirring up quarrels and suits."

Thus, it appears that Mr. Gibson, upon discovering these infringements, purchased the copyrights so as to pursue the infringement actions against the allegedly liable parties. Neither the Review Journal, nor Righthaven after its purchase of the Work, sent a cease and desist letter, nor any other request to discontinue the alleged infringement, prior to initiating this action. Instead, Righthaven has brought this lawsuit (and as of this writing close to 190 others) against alleged infringers, further adding to this Court's overloaded docket. Righthaven's motivation for avoiding the simple act of sending a letter requesting that Mr. Barham cease and desist is simple, it is using these lawsuits as a source of revenue. Such abuse of legal process should be rejected.

CONCLUSION

In this case, Daniel Barham, has operated a blog for the purpose of educating the general public about the state of urban planning and architecture across the world. His actions in copying a small portion of a Review-Journal article and the Work contained within are consistent with this purpose fall within the fair use doctrine. Furthermore implied licence was given, and continues to be given by the Review-Journal and by extension Righthaven. The nature of a blog is to be informative, and such uses for the internet should be encouraged by copyright law, especially where the author of the blog, as Mr. Barham herein does not derive commercial benefit from the website that displays the blog. Defendant Daniel Barham asks this Court to dismiss the allegations of copyright infringement based upon Plaintiff's lack of ownership of the Work, fair use of copied materials, implied licence, and unclean hands.

# EXHIBIT 1

# EXHIBIT 1

# LAS VEGAS REVIEW-JOURNAL

Las Vegas News, Sports, Business, Entertainment and Classifieds

HOME   NEWS   SPORTS   BUSINESS   LIFESTYLES   ENTERTAINMENT   TRAVEL   OPINION   OBITUARIES   JOBS   AUTOS   HOMES   CLASSIFIEDS   DEALS

Advertise | Subscribe or Manage your account | E-mail / mobile alerts | E-edition

Search

Saturday
Dec 11, 2010

SAVE up to 40%
ON VEGAS ROOMS

Mostly Sunny 61
Weather Forecast

The ORLEANS
35% OFF
Room Rates

Get up-to-date
Health and Fitness
information

RECENT EDITIONS
Sun | Mon | Tue | Wed | Thu | Fri | Sat



News

## Vdara visitor: 'Death ray' scorched hair

### Chicago lawyer says bag also melted

Sep. 25, 2010
Copyright © Las Vegas Review-Journal

By ALAN WHITELY
LAS VEGAS REVIEW-JOURNAL

SAVE THIS   E-MAIL THIS   PRINT THIS   MOST POPULAR   RSS FEEDS   POST A COMMENT



The Vdara Hotel swimming pool was a crowded place on a recent Sunday afternoon.

The tall, sleek, curving Vdara Hotel at CityCenter on the Strip is a thing of beauty.

But the south-facing tower is also a collector and bouncer of sun rays, which -- if you're at the hotel's swimming pool at the wrong time of day and season -- can singe your hair and melt your plastic drink cups and shopping bags.

Hotel pool employees call the phenomenon the "Vdara death ray."

A spokesman for MGM Resorts International, which owns Vdara, said he prefers the term "hot spot" or "solar convergence" to describe it. He went on to say that designers are already working with resort staff to





$350 voucher for $175

CELEBRATIONS

FREE
Keepsake
Plaque

with every paid
Celebration
announcement
in the Las Vegas



MIKE JOHNSON/LAS VEGAS
REVIEW-JOURNAL

Bill Pintas, a Chicago lawyer and businessman, took this photo of his melted plastic bag after he was caught unexpectedly at the Vdara pool deck in a "hot spot" of reflected sunlight.
COURTESY OF BILL PINTAS

were too hot to touch. So he ran barefoot to the shade.

"I was effectively being cooked," Pintas said. "I started running as fast as I could without looking like a lunatic."

Then he smelled an odor, and realized it was coming from his head, where a bit of hair had been scorched. It was about 12:20 p.m., as best Pintas can recall.

Taking brief refuge at the pool's bar area, Pintas chatted with employees. He said they chuckled when he described what had happened. "Yes, we call it the death ray," he says they told him. Sometimes it causes disposable drink glasses to melt, a cocktail waitress added.

Pintas told the Review-Journal that at midday Sept. 16, after a brief dip in the hotel pool, he was sunning on a recliner. He was on his stomach, relaxed, eyes closed.

But suddenly, the lawyer became so uncomfortably hot that he leaped up to move. He tried to put on his flip-flop sandals but, inexplicably, they

Chicago visitor Bill Pintas experienced Vdara's "death ray" recently. A lawyer, he was here on business for Preferred Capital Lending, which he co-owns. He also co-owns a Vdara condo.

went on to say that designers are already working with resort staff to come up with solutions.

Designers foresaw the issue, and thought they had solved it by installing a high-tech film on the south-facing glass panes, according to Gordon Absher, the MGM spokesman. The film scatters more than 70 percent of reflected rays. But that's not enough, Absher acknowledged, as some pool guests are still uncomfortable.



Balanced Life Hypnotherapy

announcement
in the Las Vegas
Review-Journal

SUBMIT YOUR
ANNOUNCEMENT
TODAY!

MULTIMEDIA

WE'RE SORRY

The news item is currently unavailable.

Please try again later.

**Sponsored Links**

**Mortgage Rate Drops to 3.6% FIXED!**
$200,000 loan for $708/month Free Quotes - No SSN Rqd. Save $1000s!

**Mortgage Refinance at 2.67%**
$200,000 mortgage for $699/month. See Lower Payment NOW- No SSN Reqd.

**Browse the web faster, Download Chrome**
Browse the web as fast as you think. Give Google Chrome a try







See how we put
the Mojo back
in auctions.



what had happened. "Yes, we call it the death ray," he says they told him. Sometimes it causes disposable drink glasses to melt, a cocktail waitress added.

After the intense reflection had passed, Pintas returned to his lounge chair. He remembered that a patron nearby laughed, and said something like, It got you, too?

Then he noticed something more — a flimsy plastic bag holding his newspaper had partially melted. The portion of bag bearing the name Vdara had entirely melted away. Holes marked where the letters, in black ink, had absorbed the heat. Pintas snapped a photo of the bag, which he shared with the newspaper.

After Pintas' experience, a Review-Journal reporter went to the Vdara pool twice. Employees did not know they were talking to a reporter.

The "hot spot" was visible during one of the visits, but no guests were in its reach. An employee pointed out the zone and said it was "like a magnifying glass that shines down" over a space about 10 feet by 15 feet, which moves as the Earth rotates. At this time of year, the bright reflection is present for about an hour and a half, both before noon and after, according to the young man.

The Review-Journal's other visit was well past noon, so the phenomenon was gone. But several employees recognized the "Vdara death ray" nickname, and readily spoke about the effect.

"It's basically a glare," said one.

"It's like 20 degrees hotter" wherever the reflection is hitting, another one said.

Pintas disagrees strongly with the "glare" terminology. Does glare "painfully heat your hair (and scalp)?" he asked in an e-mail after he returned to Chicago. "Glare sounds like what a politician or insurance attorney would call it. ...

"This is a real risk to pool guests and pool employees," Pintas concludes. Plastic shopping bags are often made of polyethylene, which melts at between 120 and 130 degrees. Many disposable plastic cups are made of polypropylene, which melts at about 160 degrees.

Pintas' theory is that Vdara's curved southern wall acts as a parabola to collect and intensify the afternoon rays, which it then reflects.

Viewed from above, the Vdara tower resembles a crescent. The crescent's southern-facing side is concave. There is no tall building farther south to block the sun's hot afternoon rays, so Vdara receives the full brunt. Its pool lies at the center of this southern-facing wall, on top of a low-rise building that is three stories tall.

A concave reflective surface can act "as a lens," according to Kerry Haglund at the Center for Sustainable Building Research, which is at the University of Minnesota. But she declined to speculate on whether the Vdara's wall is acting as one. Sophisticated computer modeling can determine whether its "facade configuration" and "reflective surface" interact in a way that creates a hazard for pool users, Haglund said via e-mail.

in auctions.



research, which is at the University of Minnesota, but she declined to speculate on whether the Vdara's wall is acting as one. Sophisticated computer modeling can determine whether its "facade configuration" and "reflective surface" interact in a way that creates a hazard for pool users, Haglund said via e-mail.

The Vdara -- and five other CityCenter buildings -- are LEED-certified, a prestigious designation that means the buildings are designed, built and operated to conserve resources and to reduce impacts on the environment. Rafael Vinoly Architects designed Vdara.

Pintas said he doesn't intend to sue Vdara over the reflection issue. But as a condo owner, he worries about the health consequences and expects the hotel to fix the problem.

A new building's first season of operation always uncovers glitches, Absher also said. Vdara solutions under review include adding more foliage to the pool deck, offering larger sun umbrellas and building a shade structure. But the challenge of constructing shade is that the sun, and the reflection, are moving targets.

CityCenter's Vdara isn't the first high-profile structure to reflect brightly. In Las Vegas, both the AdventureDome at Circus Circus and the Mandalay Bay have reflection issues, Absher noted. In early spring, he added, some pool guests at Mandalay Bay even seek out the hot spots, because they are more comfortable for sunning.

In Los Angeles, the Disney Concert Hall -- by noted architect Frank Gehry -- had to tone down its reflectivity by sanding some of its curving exterior metal surfaces.

Initially, its reflections were raising temperatures in nearby buildings and impairing the vision of passers-by. In 2004, the Los Angeles Times ran a story about the hall, below the headline, "Disney venue reflects badly on downtown."

Reporter Alan Maimon contributed to this article. Contact reporter Joan Whitely at jwhitely@reviewjournal.com or 702-383-0268. Contact Alan Maimon at amaimon@reviewjournal.com or 702-383-0404.

## RELATED TOPICS

Bill Pintas
CityCenter
Disney Concert Hall
Gehry
Joan Whitely
Terry Haglund
LEED
melt
M+M
pool
reflection
sustainability
Vdara

**Share & Save**

Sponsored Links

Make Money with Stocks
Tricks to beat the stock market and to make a daily living from it.

Invest Online Today!
24/7 Support, Investment Analysis and Free Consultations!

Mortgage Rate at 2.5% Fixed!!
$250,000 mortgage for $874/mo. No closing cost option. Act FAST!

Standing Weekly Ad

# EXHIBIT 2

# EXHIBIT 2

# When Architects Try for a Luxury Hotel, and build a Death Ray





**FILED UNDER** : ⌐□□ ░░░▒░ ▒▒▒▒ ▒░░▒ ▒▒▒▒▒▒▒▒

**FILED UNDER** : ▒░░▒▒▒▒▒ ░░▒ MGM ░░,BROWER

In news today, a first in building construction) quite by accident MGM resorts has created the worlds first functioning death ray)

Employees call it the "Vdara death ray," although a spokesman for MGM Resorts preferred to call it a "solar convergence"

Essentially what happens is similar to a solar camp stove, for those of you that remember your boy scout training, that these architects clearly did not, the sun beams bounce off of the concave facade of the Vdara Hotel at CityCenter and travel in a focused beam across the hotel's pool area.   On a clear day this beam can singe hair and melt drinking cups as it travels poolside. Apparently designers predicted this problem and put a high-tech film on the building glass but it appears to be ineffective

The Las Vegas Review Journal printed a personal account

Chicago visitor Bill Pintas experienced Vdara's "death ray" recently.  A lawyer, he was here on business for Preferred Capital Lending, which he co-owns  He also co-owns a Vdara condo.

Pintas told the Review-Journal that at midday Sept. 16, after a brief dip in the hotel pool, he was stunning on a recliner. He was on his stomach, relaxed, eyes closed

But suddenly, the lawyer became so uncomfortably hot that he leaped up to move. He tried to put on his flip-flop sandals but, inexplicably, they were too hot to touch. So he ran barefoot to the shade.

"I was effectively being cooked," Pintas said.  "I started running as fast as I could without looking like a lunatic."

Then he smelled an odor, and realized it was coming from his head, where a bit of hair had been scorched. It was about 12:20 p.m., as best Pintas can recall :

"I was effectively being cooked," Pirtas said. "I started running as fast as I could without looking like a lunatic."

Then he smelled an odor, and realized it was coming from his head, where a bit of hair had been scorched. It was about 12:20 p.m., as best Pirtas can recall





DISCUSSION



**3 Responses to "When Architects Try for a Luxury Hotel, and build a Death Ray."**





luxury hotels are always expensive but they offer some very attractive features and packages."



# EXHIBIT 3

# EXHIBIT 3

## *-APPLICATION-*

## Title
Title of Work: Vdara death-ray

## Completion/Publication
Year of Completion: 2010

Date of 1st Publication: September 25, 2010        Nation of 1st Publication: United States

## Author
■        Author: Stephens Media LLC

Author Created: text

Work made for hire: Yes

Citizen of: United States        Domiciled in: United States

## Copyright claimant
Copyright Claimant: Righthaven LLC

9960 West Cheyenne Avenue, Suite 210, Las Vegas, NV, 89129-7701, United States

Transfer Statement: By written agreement

## Rights and Permissions
Organization Name: Righthaven LLC

Name: Chief Executive Officer

Email: sgibson@righthaven.com        Telephone: 702-527-5900

Address: 9960 West Cheyenne Avenue

Suite 210

Las Vegas, NV 89129-7701 United States

## Certification

**Name:** Steven A. Gibson

**Date:** November 24, 2010

**Applicant's Tracking Number:** 0002160

Registration #:

Service Request #:  1-524088592

Application Date:  11-24-2010 12:55:02

## Correspondent

| | |
|---|---|
| Organization Name: | Righthaven LLC |
| Name: | Steven A. Gibson |
| Address: | 9960 West Cheyenne Avenue |
| | Suite 210 |
| | Las Vegas, NV 89129-7701 United States |

## Mail Certificate

Righthaven LLC
Steven A. Gibson
9960 West Cheyenne Avenue
Suite 210
Las Vegas, NV 89129-7701  United States

# EXHIBIT 4

# EXHIBIT 4

News

# Vdara visitor: 'Death ray' scorched hair




Comments [29] | Add a comment
Back to: News

By JOHN KATSILOMETES
L-S VEGAS REVIEW-JOURNAL

Buy this photo

Tools

☑ Email
🖶 Print
💾 Save
🔗 Share
RSS

The tall, sleek, curving Vdara Hotel at CityCenter on the Strip is a thing of beauty.

But the south-facing tower is also a collector and bouncer of sun rays which --

ADVERTISE HERE!
CLICK FOR MORE INFO

Geographer Jackson Sandoval at the inauguration news said ate again

Teen was shot dead; pain go...

Session's challenges far to face her, assembly woman.

Obama's preliminary, hearing begins toda...

Buried dog found near Hoover Dam identified

All of Today's Headlines...





UNLY FANS

*SNOW IN THE DESERT!
GOV. SANDOVAL'S
INAUGURATION

laughlin
IT'S LIKE YOU OWN THE PLACE
SEE THE BEST RATES HERE









UNLV FANS
read what's
going on
at the
games by
UNLVgirl

Featured Homes

By JOHN... Hotel
LAS VEGAS REVIEW-JOURNAL

The tall sleek curving Vdara Hotel at CityCenter on the Strip is a thing of beauty.

But the south-facing tower is also a collector and bouncer of sun rays which -- if you're at the hotel's swimming pool at the wrong time of day and season -- can singe your hair and melt your plastic drink cups and shopping bags.

Hotel pool employees call the phenomenon the "Vdara death ray."

A spokesman for MGM Resorts International which owns Vdara said he prefers the term "hot spot" or "solar convergence" to describe it. He went on to say that designers are already working with resort staff to come up with solutions.

Designers foresaw the issue and thought they had solved it by installing a high-tech film on the south-facing glass panes on the south-facing tower. But that's not enough Absher acknowledged as some pool guests are still uncomfortable

Chicago visitor Bill Pintas experienced Vdara's "death ray" recently. A lawyer he was here on business for Preferred Capital Lending which he co-owns. He






By JOHN HURTLE
LAS VEGAS REVIEW-JOURNAL

The tall, sleek curving Vdara Hotel at CityCenter on the Strip is a thing of beauty.

But the south-facing tower is also a collector and bouncer of sun rays which -- if you're at the hotel's swimming pool at the wrong time of day and season -- can singe your hair and melt your plastic drink cups and shopping bags.

Hotel pool employees call the phenomenon the "Vdara death ray."

A spokesman for MGM Resorts International which owns Vdara said he prefers the term "hot spot" or "solar convergence" to describe it. He went on to say that designers are already working with resort staff to come up with solutions.

Designers foresaw the issue and thought they had solved it by installing a high-tech film on the south-facing glass panes according to Gordon Absher the MGM spokesman. The film scatters more than 70 percent of reflected rays. But that's not enough Absher acknowledged as some pool guests are still uncomfortable.

Chicago visitor Bill Pintas experienced Vdara's "death ray" recently. A lawyer he was here on business for Preferred Capital Lending which he co-owns. He



Featured Homes

UNLV FANS
read what's
going on
at the
games by
UNLVgirl





UNLV FANS
read what's
going on
at the
games by
UNLVgirl

**Featured Homes**





By JOHN KATSILOMETES
LAS VEGAS REVIEW-JOURNAL

The tall sleek curving Vdara Hotel at CityCenter on the Strip is a thing of beauty.

But the south-facing tower is also a collector and bouncer of sun rays which -- if you're at the hotel's swimming pool at the wrong time of day and season -- can singe your hair and melt your plastic drink cups and shopping bags.

Hotel pool employees call the phenomenon the "Vdara death ray."

A spokesman for MGM Resorts International which owns Vdara said he prefers the term "hot spot" or "solar convergence" to describe it. He went on to say that designers are already working with resort staff to come up with solutions.

Designers foresaw the issue and thought they had solved it by installing a high-tech film on the south-facing glass panes according to Gordon Absher, the MGM spokesman. The film scatters more than 70 percent of reflected rays. But that's not enough Absher acknowledged as some pool guests are still uncomfortable.

Chicago visitor Bill Pintas experienced Vdara's "death ray" recently. A lawyer he was here on business for Preferred Capital Lending which he co-owns. He





enough Absher acknowledged as some pool guests are still uncomfortable

Chicago visitor Bill Pintas experienced Vdara's "death ray" recently. A lawyer he was here on business for Preferred Capital Lending which he co-owns He also co-owns a Vdara condo

Pintas told the Review-Journal that at midday Sept 16 after a brief dip in the hotel pool he was sunning on a recliner He was on his stomach relaxed eyes closed

But suddenly the lawyer became so uncomfortably hot that he leaped up to move He tried to put on his flip-flop sandals but inexplicably they were too hot to touch So he ran barefoot to the shade

"I was effectively being cooked," Pintas said "I started running as fast as I could without looking like a lunatic"

Then he smelled an odor and realized it was coming from his head where a bit of hair had been scorched It was about 12 20 p m as best Pintas can recall

Taking brief refuge at the pool's bar area Pintas chatted with employees He said they chuckled when he described what had happened "Yes we call it the death ray," he says they told him Sometimes it causes disposable drink glasses to melt a cocktail waitress added

After the intense reflection had passed Pintas returned to his lounge chair He remembered that a patron nearby laughed and said something like It got you too?

**Calendar Search**

Select a tab above and enter your search

Submit an event | Advanced search

**This Week**

| | Thu | Fri | Sat | Su |
|---|---|---|---|---|

**Hot Tickets**



**Marketplace Ads and Coupons**

**Autos**

**Homes**

**Jobs**





remembered that a patron nearby laughed and said something like "It got you too?"

Then he noticed something more -- a flimsy plastic bag holding his newspaper had partially melted. The portion of bag bearing the name Vdara had entirely melted away. Holes marked where the letters "in black ink" had absorbed the heat. Pintas snapped a photo of the bag, which he shared with the newspaper.

After Pintas' experience, a Review-Journal reporter went to the Vdara pool twice. Employees did not know they were talking to a reporter.

The "hot spot" was visible during one of the visits, but no guests were in its reach. An employee pointed out the zone and said it was "like a magnifying glass that shines down" over a space about 10 feet by 15 feet, which moves as the Earth rotates. At this time of year, the bright reflection is present for about an hour and a half, both before noon and after, according to the young man.

The Review-Journal's other visit was well past noon, so the phenomenon was gone. But several employees recognized the "Vdara death ray" nickname and readily spoke about the effect.

"It's basically a glare," said one.

"It's like 20 degrees hotter" wherever the reflection is hitting, another one said.

Pintas disagrees strongly with the "glare" terminology. Does glare "painfully heat your hair (and scalp)?" he asked in an e-mail after he returned to Chicago. "Glare sounds like what a politician or insurance attorney would call it.

"This is a real risk to pool guests and pool employees," Pintas concludes. Plastic shopping bags are often made of polyethylene, which melts at between 120 and 130 degrees. Many disposable plastic cups are made of polypropylene, which melts at about 160 degrees.

Pintas' theory is that Vdara's curved southern wall acts as a parabola to collect and intensify the afternoon rays, which it then reflects.

## Jobs
## Classifieds
### Find a Business

Feature Business

[ Search ]

Free 1.fc
Lose the Weight
Keep it Off
Change the Way
You Burn Fat!

Click here for Special offers!

The Tree For Life

parabola to collect and intensify the afternoon rays which it then reflects

Viewed from above the Vdara tower resembles a crescent. The crescent's southern-facing side is concave. There is no tall building farther south to block the sun's hot afternoon rays so Vdara receives the full brunt. Its pool lies at the center of this southern-facing wall on top of a low-rise building that is three stories tall

A concave reflective surface can act "as a lens," according to Kerry Haglund at the Center for Sustainable Building Research which is at the University of Minnesota. But she declined to speculate on whether the Vdara's wall is acting as one. Sophisticated computer modeling can determine whether its "facade configuration" and "reflective surface" interact in a way that creates a hazard for pool users' Haglund said via e-mail

The Vdara -- and five other CityCenter buildings -- are LEED-certified a prestigious designation that means the buildings are designed built and operated to conserve resources and to reduce impacts on the environment. Rafael Vinoly Architects designed Vdara

Pintas said he doesn't intend to sue Vdara over the reflection issue. But as a condo owner he worries about the health consequences and expects the hotel to fix the problem

A new building's first season of operation always uncovers glitches Absher also said Vdara solutions under review include adding more foliage to the pool deck offering larger sun umbrellas and building a shade structure. But the challenge of constructing shade is that the sun and the reflection are moving targets

CityCenter's Vdara isn't the first high-profile structure to reflect brightly. In Las Vegas both the AdventureDome at Circus Circus and the Mandalay Bay have reflection issues. Absher noted in early spring he added some pool guests at Mandalay Bay even seek out the hot spots because they are more comfortable to sunning

In Los Angeles the Disney Concert Hall -- by noted architect Frank Gehry -- had to tone down its reflectivity by sanding some of its curving exterior metal surfaces

In Los Angeles the Disney Concert Hall -- by noted architect Frank Gehry -- had to tone down its reflectivity by sanding some of its curving exterior metal surfaces.

Initially, its reflections were raising temperatures in nearby buildings and impairing the vision of passers-by. In 2004, the Los Angeles Times ran a story about the hall below the headline "Disney venue reflects badly on downtown."

Reporter Alan Maimon contributed to this article. Contact reporter Joan Whitely at jwhitely@reviewjournal.com or 702-383-0268. Contact Alan Maimon at amaimon@reviewjournal.com or 702-383-0404.

Trending topics: Bill Pintas | Cit,Center | Disne, Concert Hall | Gehr, | Joan Whitel, | hen; Haglund | LEED | melt | flght | pool | reflection | sustainability | vdara

---

Comments (25)
Share your thoughts on this story. **You are not currently logged in.** You must be registered to comment.Register | Sign In | Terms and Conditions

................................................

................................................

................................................

................................................

[Submit]

Some comments may not display immediately due to an automatic filter. These comments will be reviewed within 24 hours. **Please do not submit a comment more than once.**
Note: Comments made by reporters and editors of the Las Vegas Review-Journal are presented with a yellow background.

Report abuse
**nine iron** wrote on September 26, 2010 03:55 AM:

@Sean - Caesar's pool closes at 6...7 at latest on weekends.